## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY, KANSAS

DEREK WILLIAMS,                    )          Case No.:
                                  )
          *Plaintiff*,             )
                                  )
v.                                )
                                  )
EPIC LANDSCAPE PRODUCTIONS,        )
INC.,                             )
                                  )
Please serve                      )
John A. Constant                  )
17755 Mission Road                )
Stilwell, Kansas 66085,           )
                                  )
          *Defendant*.             )

## COMPLAINT

Derek Williams, ("Williams" or "Plaintiff") for his Complaint against Epic Landscape Productions, Inc. ("Epic"), alleges the following.

## PARTIES

1.     Williams is a citizen of the United States and a resident of Jackson County, Missouri.

2.     Upon information and belief, Defendant Epic Landscape Productions, Inc., is a Kansas corporation authorized to do work in the state of Kansas.

## NATURE OF ACTION

3.     This action seeks redress for retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) ("Title VII") and disability (or perceived disability) discrimination under the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq. ("ADA").

## JURISDICTIONAL BASIS

4.    This Court has primary jurisdiction over the Title VII and ADA claims, pursuant to 28 U.S.C. §1331.

5.    Defendant Epic Landscape Productions, Inc., is located within this district. Accordingly, as the acts complained of herein took place within this district, the venue is proper in this district under 28 U.S.C. §1391.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

6.    Williams incorporates by reference the above paragraphs as though set forth separately herein.

7.    Williams filed a Charge of Discrimination (No. 563-2021-01893) with the U.S. Equal Employment Opportunity Commission ("EEOC") for disability and age discrimination and retaliation on May 28, 2021. Williams was issued a notice of his right to sue for this Charge on October 18, 2021. This Complaint has been filed within 90 days of receipt of each. *See* documents attached hereto.

8.    Accordingly, Williams has met all administrative prerequisites prior to filing this action.

## FACTS COMMON TO ALL COUNTS

9.    Williams started working for Epic in November 2019.

10.    For all practical purposes, Williams was a spray technician at Epic's location at 23933 West 175th Street, Gardner, Kansas beginning in 2019.

11.    Williams received a 27-cent-per-hour raise in January 2020 based on his performance.

2

12.     Williams suffers from a disability called dysgraphia. Dysgraphia is a neurological disorder characterized by writing disabilities. Specifically, dysgraphia causes Williams' writing to be distorted or incorrect.

13.     Williams started working closely with Mr. Varela in the office. Mr. Varela commented to Williams, "You need to work on your handwriting, dude." Williams told him "I have dysgraphia," and explained his disability to him. Up to this point, there had been no complaints about Williams' performance.

14.     Between March 2020 and August 2020, Williams was subjected to a hostile working environment by Mr. Varela. Among other things, Williams was called a "retard" and a "dumbass," demoted, threatened with termination, and reprimanded for things in front of other workers. Other employees without a disability were not subject to the same treatment.

15.     In the summer of 2020, Williams started filing complaints with Human Resources. Indeed, Williams requested to meet and have a conversation with managers regarding the discriminatory treatment.

16.     In January 2021, following these complaints, Williams was cornered in the shop by Mr. Varela and told he needed to pay $120 directly to Mr. Varela for a "special hoodie" or face termination. Williams didn't pay and was terminated by Mr. Varela.

17.     That same day, Williams sent an email to Anne Spachman, informing her of what happened and again asking for a time to meet and discuss the retaliation and discrimination Williams was facing. During the discussion that followed, Williams informed Ms. Spachman and John Morganer of Williams' disability.

18.     Ultimately, Williams was not terminated in January 2021 for failing to pay Mr. Varela for the special hoodie. Following this incident and subsequent meetings, things only got worse for Williams.

19.     Williams was subjected to heightened scrutiny, had his hours cut, and was subjected to Mr. Varela's telling other employees to complete "rat sheets" on Williams in another effort to terminate him.

20.     In March 2021, Williams filed another employee complaint. The complaint stated, among other things, that Williams was being discriminated against and was suffering retaliation because of his disability. Ms. Spachman acknowledged receipt of the complaint and set up a meeting for March 5, 2021. Surprisingly, during this meeting, Williams' complaints of blatant discrimination and retaliation were ignored. Williams was insulted, had his complaint waved in his face, and was terminated for vague and pretextual reasons.

21.     Shockingly, this termination came in the wake of Williams' internal complaints regarding the disability discrimination.

22.     Accordingly, it is reasonable to infer that the explanation given to Williams is misleading and was to cover up a discriminatory and retaliatory purpose in the decision to terminate him.

23.     Williams' legitimate complaints of discrimination were ignored, and he was discriminated against and terminated because of his disability, because of a perceived disability, and/or in retaliation for his complaints of discrimination.

## COUNT I
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.
Retaliation**

24.     Williams realleges and incorporates all preceding paragraphs.

25.     Williams engaged in protected activity by complaining about being discriminated against, specifically regarding his dysgraphia diagnosis.

26.     Epic engaged in adverse employment actions against Williams for engaging in protected activities. Such adverse employment actions have been in the form of subjecting him to unfavorable terms and conditions of employment. The adverse employment actions have materially and adversely affected Williams' overall terms and conditions of employment.

27.     A reasonable employee would find Epic's retaliatory acts materially adverse, and such acts would dissuade a reasonable person from complaining about discrimination.

28.     Epic's retaliatory acts against Williams were a direct and proximate result of his protected activities.

29.     That the materially adverse acts alleged above directly and proximately caused Williams to suffer damages, including lost wages, lost benefits, garden-variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

30.     Epic's retaliation against Williams was done with malice and reckless indifference to Williams' federally protected rights. Epic is therefore liable for punitive damages in an amount sufficient to punish Epic and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Williams prays for judgment against Epic on Count I of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of Title VII; for compensatory and punitive damages, equitable relief, funds expended, and reasonable attorneys' fees

5

as provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.


### COUNT II
**Violation of the Americans with Disabilities Act, 42 U.S.C. Ch. 126 §12101, *et seq*.
Disability Discrimination**

34. Williams realleges and incorporates all preceding paragraphs.

35. Epic was an employer for purposes of the ADA.

36. Williams was an employee of Epic for the purposes of the ADA.

37. Williams was disabled for purposes of the ADA.

38. Williams had a record of being disabled for purposes of the ADA.

39. Epic regarded Williams as being disabled for purposes of the ADA.

40. Epic terminated Williams because he was disabled, had a record of being disabled, or it regarded him as disabled.

41. The adverse employment actions alleged above directly and proximately caused Williams to suffer damages, including lost wages, lost benefits, garden-variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

42. The persons who terminated Williams were agents of Epic who were acting in the court and scope of their agency with Epic or with express authority from Epic.

43. Epic, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Williams' federally protected rights. Williams is therefore liable for punitive damages in an amount sufficient to punish Epic and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Williams prays for judgment against Epic on Count II of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of 42 U.S.C. §12101, et seq.; for compensatory and punitive damages, equitable relief, funds expended, and reasonable attorneys' fees as provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.

## JURY DEMAND AND PLACE OF TRIAL

Williams respectfully requests a trial by jury on all issues so triable in Kansas City, Kansas.

## DESIGNATION OF PLACE OF TRIAL

Williams respectfully requests that trial in this matter be held at the Robert J. Dole Courthouse, 500 State Avenue, Kansas City, Kansas 66101.

HKM EMPLOYMENT ATTORNEYS LLP

/s/ *John J. Ziegelmeyer III*
John J. Ziegelmeyer III      KS No. 23003
Brad K. Thoenen             KS No. 24479
Kevin Todd                  KS No. 78998
1501 Westport Road
Kansas City, Missouri 64111
Tel: 816.875.3332
jziegelmeyer@hkm.com
bthoenen@hkm.com
www.hkm.com
ATTORNEYS FOR PLAINTIFF